UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LISA V. COOLEY, | : | Case No. 1:08-cv-499 |
| Plaintiff, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED.**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled," and, therefore, unentitled to a period of disability, disability income benefits ,and supplemental security income. (Transcript ("Tr.") 14-26).

**I. FACTS AND PROCEDURAL HISTORY**

On October 21, 2004, Plaintiff filed an application for disability insurance benefits ("DIB") and an application for supplemental security income ("SSI"), alleging a disability onset date of July 31, 2001. (Tr. 57-61; 247-248). As determined by the ALJ, Plaintiff suffers from a severe combination of the following impairments: osteoarthritis of the

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

bilateral knees, obesity, depression, and post-traumatic stress disorder. (Tr. 19).

On January 26, 2005, Plaintiff's claims were denied on the state agency level. (Tr. 31-33). Thereafter, on February 8, 2005, Plaintiff requested reconsideration. (Tr. 36). On May 10, 2005, Plaintiff's claims were again denied on reconsideration. (Tr. 37-38). On May 12, 2005, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 39). A hearing was held on May 4, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 267-283). A vocational expert ("VE"), Dr. Stephanie G. Barnes, was also present and testified. (Tr. 284-291).

On May 15, 2007, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 14-26). That decision became Defendant's final determination upon denial of review by the Appeals Council on June 10, 2008. (Tr. 6-8).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since July 31, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: osteoarthritis of the bilateral knees; obesity; depression; and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: She can lift/carry/push/pull up to 20 pounds occasionally and up to 10 pounds frequently. She can in combination stand and/or walk for up to 6 hours per 8-hour workday. She can only occasionally stoop, kneel, crouch, climb ramps/stairs, and perform work requiring the forceful use of the lower extremities. She should not crawl or climb ladders/ropes/scaffolds. The claimant can perform only simple, routine, repetitive tasks and understand, remember, and carry out only short and simple instructions. She cannot interact with the general public and can only occasionally interact with supervisors and coworkers. The claimant's job should not require more than ordinary and routine changes in work setting or duties. The claimant is able to make only simple work related decisions. Her job should not require more than simple reading, writing, or math.

6. The claimant is capable of performing past relevant work as a hotel housekeeper (DOT# 323.687.010), which the vocational expert testified is light and unskilled work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2001 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 19-25).

The ALJ concluded that Plaintiff was not disabled, and, therefore, not entitled to a period of disability, disability insurance benefits or supplemental security income. (Tr. 17, 25-26).

On appeal, Plaintiff argues that the ALJ erred: (1) in determining Plaintiff's residual functioning capacity ("RFC"); and (2) in finding the Plaintiff was not disabled on the basis of pain. Each argument will be addressed in turn.

## II. ANALYSIS

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted).

### A. First Assignment of Error

In her first assignment of error, Plaintiff argues that the ALJ erred in determining her RFC. Specifically, Plaintiff contends that the ALJ improperly weighed Dr. Sheridan's RFC assessment, in which he concluded that Plaintiff was restricted to lifting only ten pounds in a sedentary job setting. Plaintiff argues that Dr. Sheridan's opinion is entitled

to greater weight than other medical source opinions because Dr. Sheridan was an examining physician. Plaintiff also argues that the ALJ erred in determining Plaintiff's limitations arising from her mental impairments.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed.Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent . . . with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3).

After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07cv331, 2009

WL 648597, *13 (S.D.Ohio Mar. 11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id*. (citing Social Security Ruling 96-6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id*. (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue*, No. 3:07cv00469, 2009 WL 540679, *8 (S.D.Ohio Mar 2, 2009).

<u>Standing Limitations</u>

Plaintiff contends that the ALJ failed to analyze any of the factors set forth in 20 C.F.R. § 404.1527(d) in discounting Dr. Sheridan's opinion about her ability to only engage in sedentary work. Dr. Sheridan diagnosed Plaintiff with mild osteoarthritis in both knees and a chronic right trapezial strain and opined that Plaintiff could do "sit-down" type of work, lifting no more than ten pounds eight hours a day. (Tr. 199). The ALJ, however, determined that Plaintiff's RFC was not limited to only sedentary work, and that she could lift up to twenty pounds occasionally. (Tr. 23).

The ALJ determined that Dr. Sheridan's restrictions on Plaintiff's ability to stand were not supported by, and actually contradicted, the findings in Dr. Sheridan's own report. (Tr. 22-23). Specifically, the ALJ noted that:

> Despite his mild findings, Dr. Sheridan opined that claimant
> could do 'sit down' type of work, lifting 10 pounds 8 hours
> per day. Presumably these restrictions are related to the
> claimant's alleged trapezial strain and her arthritis. However,
> the claimant's arthritis is mild, and there are few clinical
> findings associated with it. Additionally, Dr. Sheridan
> reported no findings to support his diagnosis of trapezial
> strain. As state agency physicians noted, the claimant's
> examinations show normal muscle strength and range of
> motion of all extremities and of the spine. The claimant's gait
> is normal without the use of ambulatory aids. At the hearing,
> the claimant reported taking no pain medication.

(Tr. 22-23). Thus, the ALJ's decision shows a consideration of 20 C.F.R. § 404.1527(d) factors, and Plaintiff's argument in this regard is without merit.

Plaintiff further argues that the ALJ's rejection of Dr. Sheridan's assessment limiting Plaintiff to sedentary work is supported by her medical records, and that the ALJ's conclusion that Plaintiff can stand for six hours per workday is not so supported. However, Plaintiff's records only reassert her subjective complaints of pain. The ALJ found Plaintiff's subjective complaints not credible because she typically reported no disabling limitations to her doctors, and because she was not compliant with her treatment.[2] (Tr. 21-22).

In fact, Plaintiff's medical records support the ALJ's conclusions in this regard. In April 2004, Plaintiff went to University Hospital complaining of bilateral knee pain. (Tr.

---

[2] Specifically, the ALJ determined that Plaintiff was a "chronic 'no show' for appointments[,]" failed to fill prescriptions, failed to ever go to prescribed physical therapy, failed, and failed to quit smoking. (Tr. 22). Plaintiff specifically assigns no error to the ALJ's conclusion in this regard.

185). Plaintiff was referred to physical therapy, prescribed Vioxx, and told to follow-up "if her pain should worsen." (Tr. 185). However, Plaintiff reported having never filled the Vioxx prescription. (Tr. 162).

Between November 2004 and January 16, 2007, there is no significant record of treatment for Plaintiff's knee, aside from a routine visit to the Elm Street Clinic on April 22, 2005. During that routine visit, Plaintiff reported arthritis in her knees, but stated that she was taking no medication. (Tr. 245).

On January 16, 2007, Plaintiff went to University Hospital complaining of bilateral knee pain. (Tr. 233). The treatment notes from that visit state that:

> The patient was seen at orthopedic clinic in 2004 and diagnosed with osteoarthritis and referred to physical therapy. However, the patient did not understand the importance of physical therapy and did not follow up for this.

(Tr. 233).

Certainly, Plaintiff's record of treatment provides substantial evidence supporting the ALJ's determination that Plaintiff does not typically report disabling limitations to her doctors. Also, Plaintiff's medical records set forth above support the ALJ's determination that Plaintiff does not comply with treatment.

Further, despite Plaintiff's contention, the ALJ's determination that Plaintiff could stand for six hours per workday is supported by the medical source opinion of Dr. McCloud. (Tr. 224). Dr. McCloud specifically concluded that Plaintiff was able to stand for a total of about six hours per workday. (Tr. 224). Having weighed the factors set

-8-

forth in 20 C.F.R. § 404.1527(d), the ALJ was justified in giving greater weight to Dr. McCloud's opinion that Plaintiff was able to sit for six hours during the workday, even though Dr. McCloud was a nonexamining physician. As a result, Plaintiff's assertion of error in this regard is also without merit.

<u>Lifting Determination</u>

Next, Plaintiff argues that the ALJ improperly substituted his own medical opinion in determining that Plaintiff can lift up to 20 pounds occasionally. Generally, an ALJ is not permitted to act as his own medical expert in making a credibility assessment. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) (holding that "[a]n administrative law judge may not draw upon his own inferences from medical reports"). Further, while an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. *See McBrayer v. Secretary of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996).

Here, Dr. Sheridan opined that Plaintiff was limited to lifting only ten pounds. (Tr. 199). Ultimately, the ALJ discounted Dr. Sheridan's lifting restrictions as too restrictive based on a lack of objective medical evidence. (Tr. 23). Dr. McCloud concluded, based on his review of Plaintiff's records, that Plaintiff was capable of frequently lifting 25

pounds, and occasionally lifting up to 50 pounds. (Tr. 224). The ALJ also rejected Dr. McCloud's opinion in this regard because such opinion inadequately considered Plaintiff's subjective complaints of pain. (Tr. 23).

Courts note that "[t]he determination of RFC . . . is an issue reserved to the SSA." *Diaz v. Chater*, 55 F.3d 300, 306 n 2 (7th Cir. 1995) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)); *see also Roy v. Apfel*, 23 Fed. Appx. 389, 390 (6th Cir. 2001) (finding that "the ALJ did not impermissibly substitute his own opinion for that of the doctors because the ALJ was speaking about residual functional capacity, an area where the ALJ makes the legal decision"). Thus, an ALJ "need not accept only physicians' opinions" when determining a Plaintiff's RFC, and "if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict." *Diaz*, 55 F.3d at 306 n2 (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985)).

Here, in resolving the conflict in opinion, the ALJ determined that Plaintiff could lift up to ten pounds frequently. (Tr. 23). Such conclusion is consistent with Plaintiff's own testimony[3] and Dr. Sheridan's conclusion that Plaintiff "can do a sit-down type of work, lifting 10 lbs. eight hours a day." (Tr. 199, 275).

The ALJ also concluded that Plaintiff could lift up to 20 pounds, but only occasionally. (Tr. 23). While the ALJ cited no specific evidence upon which he based such a conclusion, he stated it was based on Plaintiff's "medical record and credible

---

[3] During the hearing, Plaintiff was asked, "[h]ow much can you lift?" Plaintiff responded, "I'd say about maybe five to ten pounds." (Tr. 275).

portions of her testimony[.]" (Tr. 23). Given Plaintiff's testimony concerning her past work in packing and fast food, along with the lack of objective evidence suggesting more than mild arthritis in the knees, it cannot be said that the ALJ's determination reflects error. (*See* Tr. 23, 270-272).

Further, it is not clear that such a finding impacted the ultimate conclusion that Plaintiff could perform her past relevant work as a housekeeper. (Tr. 25). In a work history report completed by Plaintiff, she stated the heaviest weight she lifted while working as a housekeeper was ten pounds. (Tr. 94). Consistent with such statement, Plaintiff testified during the hearing that, in her past employment as a housekeeper, the heaviest item she ever lifted was under 20 pounds. (Tr. 271).

The VE testified that Plaintiff's testimony concerning her performance of the housekeeper position was no different than how such job was classified in the Dictionary of Occupational Titles.[4] (Tr. 286). Because the ALJ determined that Plaintiff could perform her past relevant work as a housekeeper, based on the VE's testimony, and because, by Plaintiff's own admission, she never lifted 20 pounds while working such a job, any error in this regard is harmless.

## Mental Health Determination

Finally, Plaintiff asserts error with regard to the ALJ's determination of her mental health impairments. However, Plaintiff's assigned error in this regard is not entirely

---

[4] Plaintiff never challenged the VE's testimony in this regard during the hearing.

clear. First, Plaintiff argues that the ALJ erred in finding that the opinions of the reviewing mental health physicians were consistent with the opinions of Dr. Deardorff, a the consultative clinical psychologist who actually met with Plaintiff. Further, Plaintiff apparently argues that the ALJ erred in finding only mild limitations arising from Plaintiff's mental impairments.

In reviewing Dr. Deardorff's report, he concludes that Plaintiff's "mental ability to relate to others including fellow workers and supervisors is moderately impaired" and that "[s]he would very likely have difficulty relating adequately to others in completing simple repetitive tasks." (Tr. 192). Further, Dr. Deardorff concluded that Plaintiff "would have no difficulty understanding simple instructions, but her short-term memory skills are weak and she may have difficulty retaining them." (Tr. 192). Plaintiff maintains that the these limiting conclusions contradict the reviewing doctor's opinions.

Dr. Williams, a reviewing physician, concluded that Plaintiff was moderately limited in her ability to maintain social functioning and in maintaining concentration, persistence or pace. (Tr. 215). Dr. Csokasy, another reviewing physician, concluded that Plaintiff was moderately limited in her ability to interact appropriately with the general public, to accept instructions and to respond appropriately to criticism from supervisors. (Tr. 220). Dr. Csokasy also concluded that Plaintiff was, however, not significantly limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 220).

Based on all of these opinions, the ALJ determined that Plaintiff "can perform only simple, routine tasks and understand, remember, and carry out only short simple instructions." (Tr. 24). Further, Plaintiff "cannot interact with the general public and cannot interact with supervisors or coworkers more than occasionally." (Tr. 24). Finally, Plaintiff's "job should not require more than ordinary and routine changes in work setting or duties" and Plaintiff "can make only simple work related decisions." (Tr. 25). These conclusions are supported by the opinions of Dr. Deardorff, Dr. Williams, and Dr. Csokasy.

Plaintiff also contends that the ALJ erred in determining that a review of Plaintiff's medical records shows no "significant problem with depression," and in concluding that her mental impairments pose only mild limitations. (Tr. 24-25). Again, Plaintiff contends that a finding of only mild limitations arising from her mental impairments ignores Dr. Deardorff's conclusions. However, upon review of Dr. Deardorff's report, he concluded that Plaintiff was only "moderately impaired." As a result, the ALJ's conclusions regarding Plaintiff's mental health limitations are not error because substantial evidence, namely Dr. Deardorff's report, supports the ALJ's conclusions.

Accordingly, substantial evidence supports the ALJ's RFC finding and Plaintiff's first assignment of error is overruled.

## B. Second Assignment of Error

In her second assignment of error, Plaintiff contends that the ALJ erred in failing to find her disabled on the basis of pain. Plaintiff argues that her records are replete with subjective reports of pain and that such subjective complaints were consistent.

"Pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *Lewin v. Astrue*, 142 Soc.Sec.Rep.Serv. 834, *11 (S.D. Ohio Jun. 10, 2009) (citing *Kirk v. Secretary of H.HS.*, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983)). A plaintiff is disabled on the basis of pain alone if the Commissioner first determines that "objective medical evidence of an underlying medical condition" exists. *Lewin*, 142 Soc.Sec.Rep.Serv. at *11.

If objective evidence shows an underlying condition, "the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain." *Id*. (citing *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir.1986); *Felisky*, 35 F.3d 1027, 1038-39 (6th Cir.1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir.1991)). This test, however, "does not require ... 'objective evidence of the pain itself.' " *Lewin*, 142 Soc.Sec.Rep.Serv. at *11 (citing *Duncan*, 801 F.2d at 853).

Here, there is some objective evidence of an underlying arthritic condition in

Plaintiff's knees. However, as noted above, the objective evidence does not confirm the severity of the pain, nor is the underlying impairment expected to produce disabling pain.

If the severity of claimant's alleged pain "is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians." *Lewin*, 142 Soc. Sec.Rep.Serv. at *11 (citing *Felisky*, 35 F.3d at 1039-1040).

If a plaintiff's complaints of pain are supported by consistent medical evidence, "the ALJ may not discredit plaintiff's testimony and deny benefits." *Lewin*, 142 Soc.Sec.Rep.Serv. at *12 (citing *King v. Heckler*, 742 F.2d 968, 975 (6th Cir.1984)). However, if "the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court." *Lewin*, 142 Soc.Sec.Rep.Serv. at *12 (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam)).

Here, the ALJ essentially determined that Plaintiff's complaints of pain were not consistent. The ALJ stated:

> the claimant does not typically report disablingly [sic] severe limitations. In November 2002, and March 2004, for instance, the claimant told her physician she could dress herself, make her own meals, and do her own shopping. She told Dr. Safian in April 2004 that she could ambulate well and had no mechanical symptoms. She also reported no swelling

of the knees.

(Tr. 22; *see also* Tr. 185).

Further, the ALJ noted Plaintiff's non-compliance with treatment. (Tr 22). Plaintiff went to University Hospital in April 2004, complaining of bilateral knee pain. (Tr. 185). Plaintiff was referred to physical therapy, prescribed Vioxx and told to follow-up "if her pain should worsen." (Tr. 185). However, in October 15, 2004, Plaintiff reported never filling the prescription for Vioxx. (Tr. 162).

Further, between November 2004 and January 16, 2007, there is no significant record of treatment for Plaintiff's knee aside from a routine visit to the Elm Street Clinic on April 22, 2005. (Tr. 245). Treatment notes from the routine visit show that Plaintiff reported arthritis in her knees, but stated that she was taking no medication. (Tr. 245).

Thereafter, there is no record of significant treatment for knee pain until a visit to University Hospital on January 16, 2007. (Tr. 233). Treatment notes from that visit state that:

> The patient was seen at orthopedic clinic in 2004 and
> diagnosed with osteoarthritis and referred to physical therapy.
> However, the patient did not understand the importance of
> physical therapy and did not follow up for this.

(Tr. 233).

Certainly, substantial evidence supports the ALJ's determination that Plaintiff does not report disabling limitations during her visits. In fact, Plaintiff's records show inconsistent treatment and a failure to comply with the treatment prescribed. Therefore,

because Plaintiff's complaints of disabling knee pain are not supported by consistent medical evidence, it cannot be said that the ALJ erred by failing to find Plaintiff disabled solely on the basis of pain.

Accordingly, Plaintiff's second assignment of error is overruled.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed. **IT IS THEREFORE RECOMMENDED THAT:** (1) because the decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, it should be **AFFIRMED**; and (2) as no further matters remain pending for the Court's review, this case should be **CLOSED.**


Date:  <u>August 11, 2009</u>　　　　　　　　<u>s/ Timothy S. Black           </u>
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| LISA V. COOLEY, | : | Case No. 1:08-cv-499 |
| --- | --- | --- |
| Plaintiff, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).